# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-1730

BRIAN BRUGGEMAN by and through his parents,
  Kenneth and Carol Bruggeman, *et al.*,

*Plaintiffs-Appellants,*

v.

ROD BLAGOJEVICH, *et al.*,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 5392—**John F. Grady**, *Judge.*

———————

ARGUED JANUARY 6, 2003—DECIDED APRIL 7, 2003

———————

Before POSNER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Several developmentally disabled (i.e., mentally retarded) adults, residents of Illinois, sue the responsible state officials, in their official capacity, for alleged violations of the federal Medicaid statute, the Rehabilitation Act, and the Americans with Disabilities Act. The district judge dismissed the Medicaid claim on the ground that the plaintiffs lacked standing; he dismissed the Rehabilitation Act claim at the same time also for lack of standing but without explaining why. Earlier he had dismissed the ADA claim on the basis of our decision in

*Walker v. Snyder*, 213 F.3d 344, 347 (7th Cir. 2000), which holds that only a state, and not state officials, may be sued for violations of the ADA and that the state is immune from suit by virtue of the Eleventh Amendment.

The Medicaid statute, administered by each state that enrolls in the Medicaid program but funded 50-50 by the state and the federal government, defrays certain medical expenses of individuals such as these plaintiffs who lack the wherewithal to pay the expenses themselves. The plaintiffs live at home with their parents in the Chicago metropolitan area. The parents would prefer their children to live in institutions known as "Intermediate Care Facilities for the Developmentally Disabled," most of which however are located in southern Illinois, far from Chicago. The vacancy rate for ICF/DDs in the Chicago area is very low, and the parents do not want to ship their children off to ICF/DDs in the southern part of the state because of the time and expense that would be entailed in traveling to visit them, and so they want the defendants to adopt a plan for expanding the number of ICF/DDs in the northern part of the state. They argue, and for purposes of this appeal we accept, that the defendants prefer the plaintiffs to live at home because it would cost the state more to pay for their care in an institution, and so the defendants refuse to write letters urging authorization of additional ICF/DDs in the northern part of the state to the planning agency that is responsible for such authorizations and without the letters the planning agency will not grant the authorizations. The defendants' refusal to write the letters, the plaintiffs argue, violates provisions of the Medicaid statute requiring that "medical assistance . . . shall be furnished with reasonable promptness to all eligible individuals," that the state's system of medical assistance to Medicaid patients "shall be in effect in all political subdivisions of the State," that the assistance made available to any such patient "shall not be

less in amount, duration, or scope than the medical assistance made available to any other such individual," that any eligible individual "may obtain such assistance from any institution . . . qualified to perform the . . . services required . . . who undertakes to provide him such services," and that "services will be provided in a manner consistent with . . . the best interests of the recipients." 42 U.S.C. §§ 1396a(a)(1), (8), (10)(B)(i), (19), (23).

The district judge ruled that none of these provisions entitled the plaintiffs to what they were seeking and that therefore the plaintiffs had not been injured by a violation of the statute and so lacked standing to sue. This is a misunderstanding of standing. A plaintiff has standing to sue—that is, he can invoke the jurisdiction of the court—if he is tangibly, materially, injured by the conduct of the defendant that he claims is unlawful and if the relief he seeks would redress the injury in whole or in part and thus confer a material benefit on him. Of course if his claim has no merit, then he has not been injured by any wrongful conduct of the defendant; but if the consequence were that he lacked standing, then every decision in favor of a defendant would be a decision that the court lacked jurisdiction, entitling the plaintiff to start over in another court. The district court decided that the plaintiffs have no right to live in an ICF/DD that is near their parents' home and so the defendants' refusal to adopt a plan that would create vacancies in ICF/DDs near the parents' home did not invade a legal right of the plaintiffs and so did not cause them an injury for which they are entitled to redress. This was a ruling on the merits, having nothing to do with jurisdiction.

Not that standing and the merits are always or in this case clearly distinct. The more extreme a plaintiff's claim, the more likely he is to have standing to prosecute it; the more moderate his claim, the less likely he is to have standing. If all that the plaintiffs were seeking was a plan entitling them to reimbursement for the expense of residing in an ICF/DD anywhere in Illinois, they would, we may assume, have a legally sound claim; but they would have no standing to maintain it because there are ample vacancies in the southern part of the state, and so the absence of a plan would not impair any right that they claimed under the Medicaid statute. But if they claim a right to a wider choice of ICF/DD vacancies than the defendants are willing to permit the planning agency to authorize, then they are likely to have standing, because the absence of the plan they seek is a denial of such an entitlement. Although their brief could be clearer on the point, it seems that they are indeed pressing this more extreme claim. The district court rejected the claim, but that was a rejection on the merits inaccurately described as a ruling that the plaintiffs lack standing.

But notice that we said only that the plaintiffs are *likely* to have standing; the doubt implicit in such a formulation arises from the tenuousness of the relation between the relief sought in the lawsuit and an actual benefit to the plaintiffs if they prevail. They seek merely a plan, which might not lead to an increase in the ICF/DD capacity in their immediate geographical area. Even if it did, they might not benefit. An increase in supply would evoke an increase in demand, since the plaintiffs are not the only developmentally disabled adults in northern Illinois whose parents would like to place them in a nearby ICF/DD and this is not a class action. So the plan the plaintiffs seek might not actually increase the vacancy rate. Meanwhile,

there are *some* vacancies in ICF/DDs located near the plaintiffs' homes and for all that appears the plaintiffs will find places in an existing such facility long before the plan they seek would enable them to find a place in a new facility. The potential benefit to them from the relief that they seek thus is speculative.

But not so speculative as to negate standing, which is a matter of probabilities rather than certainties. *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1242 (7th Cir. 1991). The suit seeks to remove a logjam that is preventing the creation of facilities desired by the plaintiffs, and if the likelihood of success is conjectural so is the argument for failure based on the possibility that any new facilities will be overwhelmed by other applicants.

So let us turn to the merits of the Medicaid claim, which have been fully argued despite the district judge's ruling that the plaintiffs lack standing. The statutory entitlement to reasonable promptness of medical services (42 U.S.C. § 1396a(a)(8)) is not infringed by the maldistribution (as it seems to the plaintiffs) of ICF/DDs across the state. It is not as if the plaintiffs require relocation to such a facility on an emergency basis, in which event the remoteness of any such facility from their homes, where they are living at present, would deprive them of prompt treatment. Even if they did require emergency treatment, their theory of violation would be a considerable stretch because the statutory reference to "assistance" appears to have reference to *financial* assistance rather than to actual medical *services*, though the distinction was missed in *Bryson v. Shumway*, 308 F.3d 79, 81, 88-89 (1st Cir. 2002), and *Doe v. Chiles*, 136 F.3d 709, 714, 717 (11th Cir. 1998). Medicaid is a payment scheme, not a scheme for state-provided medical assistance, as through state-owned hospitals. The regulations that

implement the provision indicate that what is required is a prompt determination of eligibility and prompt provision of funds to eligible individuals to enable them to obtain the covered medical services that they need, see 42 C.F.R. §§ 435.911(a), .930(a)-(b); a requirement of prompt *treatment* would amount to a direct regulation of medical services.

The plaintiffs argue that the state is not providing identical service statewide because the vacancy rate is lower in the southern part of the state and this favors the people living there over those who live in the northern part. The plaintiffs insist on a right of access to facilities not merely in the county or the metropolitan area in which they live but within a 45-minute drive (or 30 miles) from their homes, as if every Medicaid recipient in Illinois were entitled to be equidistant with every other from every facility that rendered services for which such a recipient might be eligible. But the plaintiffs' argument carries even further, because the plaintiffs vary in the degree and precise character of their disability and as a result each has a unique set of needs and is demanding that an ICF/DD *that is tailored to his unique needs* be within the 45-minute driving radius of his parents' home. An unattainable goal that cannot rationally be attributed to the statute, *Harris v. James*, 127 F.3d 993, 1011 (11th Cir. 1997); cf. *Boatman v. Hammons*, 164 F.3d 286, 290-92 (6th Cir. 1998), it doesn't even have a purchase in the statutory language, which requires merely that the state not exclude any of its political subdivisions from the state's Medicaid plan. The plan "shall be in effect in all political subdivisions of the State," 42 U.S.C. § 1396a(a)(1), but this doesn't mean that, as implemented, the plan has to assure identical convenience of service everywhere in the state. Even less plausible is the suggestion that lack of uniform proximity to medical facilities constitutes discrimination among Medicaid recipients. 42

U.S.C. § 1396a(a)(10)(B). See *Alexander v. Choate*, 469 U.S. 287, 302-03 (1985).

As for the right to obtain a needed medical service from a provider "who undertakes to provide him such services," 42 U.S.C. § 1396a(a)(23), the aim is to give the recipient a choice among available facilities, not to require the creation or authorization of new facilities. See *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 785-86 (1980); *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 177 (2d Cir. 1991); see also *Catanzano v. Wing*, 103 F.3d 223, 231 (2d Cir. 1996). The language we have quoted makes this clear. Finally, the "best interests" provision, 42 U.S.C. § 1396a(a)(19), is insufficiently definite to be justiciable, and in addition cannot be interpreted to create a private right of action, given the Supreme Court's hostility, most recently and emphatically expressed in *Gonzaga University v. Doe*, 122 S. Ct. 2268, 2273-75 (2002), to implying such rights in spending statutes. So the other circuits had held without even waiting for the Court to give them their marching orders in *Gonzaga. Harris v. James, supra*, 127 F.3d at 1009-11 and 1010 n. 24; *Stewart v. Bernstein*, 769 F.2d 1088, 1093 and n. 7 (5th Cir. 1985); *Bumpus v. Clark*, 681 F.2d 679, 683-84 (9th Cir. 1982), opinion withdrawn as moot, 702 F.2d 826 (9th Cir. 1983).

In summary, the plaintiffs' Medicaid claim fails—on the merits—and we move on to the other claims. We do not understand the district court's unexplained conclusion that the plaintiffs lack standing to sue under the Rehabilitation Act. So far as bears on this case, both that Act and the Americans with Disabilities Act entitle disabled persons (as the plaintiffs undoubtedly are) to care in the least restrictive possible environment. There may seem to be an element of paradox in the idea that a residential institution, such as an ICF/DD (or an alternative called "Community Integrated Living Arrangements" (CILA), which provides

care in facilities that generally are smaller than ICF/DDs and offer the residents somewhat more freedom, see http://www.thearcofil.org/newsletter/n011102.html), provides a less restrictive alternative than living at home, especially when some of the plaintiffs are seeking nonresidential services, enabling them to continue to live at home, though this may be their second choice. The paradox is dispelled by recognizing that parents, by reason of age or incapacity, may not be capable of taking good care of their adult disabled children, in which event the home environment may, realistically, be more restrictive of the child's opportunity to develop than an institutional alternative.

At all events, the plaintiffs claim that by failing to offer an alternative to the home the defendants are violating section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and more specifically an implementing regulation which provides that "recipients [of federal funding—the Rehabilitation Act is limited to such entities] shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons," 28 C.F.R. § 41.51(d), along with the corresponding and materially identical provision of the ADA and a regulation under the ADA. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(d). The district court did not consider the merits of these claims and the briefs are virtually silent on their merits. So we shall have to remand this part of the case unless we agree that it was properly dismissed on other grounds.

As with the Medicaid claim, the plaintiffs are seeking injunctive relief against state officials in their official capacity. Such a suit is a suit against the state, and unless a state consents to be sued in federal court, which Illinois has not done, the suit is barred by the Eleventh Amendment. There is the *Ex parte Young* exception discussed below and

there is also the provision of the Civil Rights Act of 1964 that "a State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act." 42 U.S.C. § 2000d-7(a)(1). The defendants argue that this provision is unconstitutional. Their argument is barred by *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000), where we held that because section 504 is applicable only to state activities that receive financial assistance from the federal government, a state's decision to accept such assistance is a decision to waive its Eleventh Amendment immunity. See also *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 170-71 (3d Cir. 2002); *Nihiser v. Ohio EPA*, 269 F.3d 626, 628 (6th Cir. 2001); *Jim C. v. United States*, 235 F.3d 1079, 1081-82 (8th Cir. 2000) (en banc); *Pederson v. Louisiana State University*, 213 F.3d 858, 875-76 (5th Cir. 2000); *Sandoval v. Hagan*, 197 F.3d 484, 493-94 (11th Cir. 1999), rev'd on other grounds, 532 U.S. 275 (2001). The defendant's constitutional argument not only is blocked by stare decisis but is also forfeited, for by failing to cite *Stanley* (except on an unrelated point) or to discuss the reasoning underlying it the defendants failed to preserve their constitutional challenge to 42 U.S.C. § 2000d-7(a)(1).

*Stanley* does not bar an Eleventh Amendment defense against the plaintiffs' ADA claim, however, because 42 U.S.C. § 2000d-7(a)(1) does not mention the ADA and so creates one of the few differences between that statute and the Rehabilitation Act. However, *Ex parte Young*, 209 U.S. 123 (1908), authorizes, notwithstanding the Eleventh Amendment, suits for prospective injunctive relief against state officials who as in this case are sued in their official capacity. It is true that *Walker v. Snyder*, cited earlier, held that only the state, and not state officials, may be sued for violating Title II of the ADA. But that holding, uniformly rejected by the other courts to have considered the issue, see

*Carten v. Kent State University*, 282 F.3d 391, 396-97 (6th Cir. 2002); *Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001); *Roe v. Ogden*, 253 F.3d 1225, 1233-34 (10th Cir. 2001); *Nelson v. Miller*, 170 F.3d 641, 646-47 (6th Cir. 1999); *Armstrong v. Wilson*, 124 F.3d 1019, 1025-26 (9th Cir. 1997), did not survive *Board of Trustees v. Garrett*, 531 U.S. 356, 374 n. 9 (2001), where the Supreme Court said that such a suit is indeed authorized by *Ex parte Young*. Although *Garrett* was a suit under Title I of the ADA, which governs the employment of disabled persons, there is, as *Walker* had noted, 213 F.3d at 346, no relevant difference between Title I and Title II, which governs access to services, so far as the applicability of *Ex parte Young* is concerned.

So the dismissal of the plaintiffs' claims under the Rehabilitation Act and the ADA must be set aside and the case remanded. For guidance on remand, we commend to the parties and the district court *Olmstead v. L.C.*, 527 U.S. 581 (1999). With reference to 42 U.S.C. § 12132 and its implementing regulation, 28 C.F.R. § 35.130, the Court explained that "if . . . the State were to demonstrate that it had a comprehensive, effectively working plan for placing qualified persons with mental disabilities in less restrictive settings, and a waiting list that moved at a reasonable pace not controlled by the State's endeavors to keep its institutions fully populated," the state would not be violating the regulation. 527 U.S. at 605-06. The purpose of the regulation is not to constitute the federal courts the supervisors of the care and treatment of disabled persons. It is to prevent the isolation or segregation of the disabled. The issue on remand will be whether Illinois has a plan oriented to that end for developmentally disabled adults.

AFFIRMED IN PART,
VACATED IN PART, AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*