Bryson v. NH HHS, et al.                    CV-99-558-M    03/26/04
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Bonnie Bryson and Claire Shepardson,
on behalf of themselves and all
others similarly situated,
        Plaintiffs
                                            Civil No. 99-558-M
        v.                                  Class Action
                                            Opinion No. 2004 DNH 057
Nicholas Vailas, in his capacity as
Commissioner of the State of
New Hampshire Department of
Health and Human Services; and
Dennis Powers, in his capacity as
Director of the State of
New Hampshire Division of
Developmental Services,
        Defendants


                         **O R D E R**


        The parties have renewed cross-motions for summary judgment

upon remand of this case from the court of appeals.  See Bryson

v. Shumway, 308 F.3d 79 (1st Cir. 2002).  Several interrelated

issues either remain, or were deferred, pending the appeal,

including, principally, whether the State of New Hampshire is

violating the rights of the plaintiff class by discriminating

against them based upon disability in the delivery of medical

services and programs.

Plaintiffs are a class of persons suffering from acquired brain disorders ("ABD") some of whom receive medical services for that condition in institutional settings (nursing homes, specialized rehabilitation facilities, etc.)[1], but who wish to receive services in home or community-based settings. The State participates in a model waiver program under Medicaid, which permits reimbursement (or, technically, use of federal funds to reimburse) providers of home and community-based ABD services. That program is limited in scope, however, and participation is currently capped at approximately 115 people. Because all 115 slots are filled, the State maintains a waiting list. Plaintiffs are all on that list.

The plaintiffs are eligible to receive home or community-based ABD services under the model waiver program in every respect except one - the lack of available slots. Medicaid services must be furnished with reasonable promptness to all eligible individuals - but with respect to the model waiver program, a person is "eligible" for community-based ABD services only if he or she is 1) on the waiting list and 2) a waiver

_____

[1] Those plaintiffs who are not institutionalized currently receive no ABD services at all.

2

program slot is available for them.  See Bryson, 308 F.3d at 88 (citing Boulet v. Cellucci, 107 F. Supp. 2d 61, 77 (D. Mass. 2000)) ("The cap on waiver services is simply a constraint on eligibility."); see also Makin v. Hawaii, 114 F. Supp. 2d 1017 (D. Haw. 1999).

The court of appeals decided that plaintiffs have no legal claim to community-based ABD services under the model waiver program, because they are not "eligible," given the State's right, under Medicaid law, to limit the model program's scope and its own financial exposure (the state and federal governments share the costs).  That decision did not end this litigation, however, because plaintiffs also have enforceable rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 41.51(a).  Both acts "entitle disabled persons to care in the least restrictive possible environment."  Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 911 (7th Cir. 2003).  As a recipient of federal funds, and as an administrator of programs and services for the mentally disabled, the State is obligated, under federal law and independently of the Medicaid statute, to

3

"administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons," Id. (citing 28 C.F.R. § 41.51(d), 42 U.S.C. § 12132; and 28 C.F.R. § 35.130(d)).

In Olmstead v. L.C., 527 U.S. 581 (1999), the Supreme Court determined that the unjustified isolation of persons with disabilities in institutional settings is properly regarded as discrimination based on disability. The court noted that "institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life," id. at 600 (citations omitted) and "confinement in an institution severely diminished the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment," id. at 601 (citation omitted).

When, as is the case here, the State's treatment professionals reasonably determine that home or community

4

placement is appropriate, and the affected person wishes such treatment, the State must provide it, _if_ the community-based placement can be reasonably accommodated, taking into account the "resources available" to the State and the needs of others receiving state-supported disability services.  In its summary judgment brief, the State incorrectly perceives the issue of accommodation as strictly related to the limited ABD waiver program; in reality, the State's obligation to provide community-based services, and the plaintiffs' right to such services, extends beyond the particular requirements or scope of the model waiver program.

Plaintiffs are invoking independent rights under the ADA and Rehabilitation Act, asserting that the State can easily provide a reasonable accommodation and deliver community-based services to everyone on the waiting list, either by choosing to enlarge the scope of the ABD waiver program (with federal subsidies), or by using available State resources exclusively, without suffering even a modest adverse fiscal or administrative impact, and without diminishing the services provided to other disabled recipients.  Predictably, the State counters that it is entitled

5

to limit the waiver program, and so, is not required to provide community-based services beyond what it chooses to provide under the waiver program - in short, that it cannot reasonably accommodate plaintiffs without making a "fundamental alteration" in the ABD waiver program.  That position misperceives the State's overriding integration obligations under the ADA and Rehabilitation Act.

Under the ADA, the State is obligated to make reasonable modifications in its program - presumably its overall mental health services program - as necessary to avoid discrimination on the basis of disability (i.e., unjustified institutionalization), unless it can establish that making requested modifications would fundamentally alter the nature of the service, programs or activity.  28 C.F.R. § 35.130(b)(7).  Whether a requested modification would involve a "fundamental alteration" turns on several factors, including the cost of providing services in the most appropriate integrated setting, the resources available to the State; and the extent to which provision of the requested community-based services would adversely affect the State's

6

ability to meet the needs of others with disabilities.  See Olmstead, 527 U.S. at 597.

In Olmstead, the Supreme Court explained that a state could demonstrate compliance with the "integration mandate" embodied in 42 U.S.C. § 12132 and its implementing regulation, 28 C.F.R. § 35.130, if it established that it had "a comprehensive, effectively working plan for placing qualified persons with mental disabilities in less restrictive settings, and a waiting list that moved at a reasonable pace not controlled by the State's endeavors to keep its institutions fully populated." Olmstead, at 527 U.S. 605-06.  So, the principal issues before this court are whether affording plaintiffs the relief they seek would amount to a fundamental alteration of the State's mental health services program, and whether the State has a comprehensive plan that is working effectively to place members of the plaintiff class in community treatment settings, and whether the waiting list moves at a reasonable pace, uncontrolled by an effort to keep available institutional space fully populated.

Stating the issues in such general terms might suggest, incorrectly, that they are subject to easy resolution. In reality, a host of complex factual and legal matters must be considered and resolved before the controlling issues can be rationally addressed and judgment entered. Can the State, for example, simply refuse to provide community-based services beyond the number of slots available in the model ABD waiver program without running afoul of the federal integration mandate? Does it make a difference that the State directly limits the number of slots available in the program by applying for only that number it chooses to fund, notwithstanding the apparent availability of additional slots from the federal government simply for the asking? If the State chooses not to take advantage of federal funding participation available through the waiver program, must it nevertheless provide a reasonable accommodation under the ADA at its own expense? Does the State have a "comprehensive" plan?[2] Is it "effective?" Is the waiting list "moving" at a "reasonable pace?" Must it move at a reasonable pace relative to each individual waiting for services, or just as to the group as a

---

[2] See principles outlined by the Office of Civil Rights in, Olmstead Update No. 2 letter, Department of Health and Human Services, Center for Medicaid and State Operations, July 25, 2000 (available at www.cms.hhs.gov/states/letters).

whole - i.e., if some move off the list into the community quickly but others never move off the list, does the list "move" at a reasonable pace?  Does the State have resources "available" to accommodate these plaintiffs?  Are those resources available through budget line item adjustments or would "new funds" be required?  What budget should the court look to when making that determination?  What do current and proposed future budgets look like?  See, e.g., Bruggeman v. Blagojevich, 219 F.R.D. 430, 434-36 (N.D. Ill. 2004) (to the extent future proposed budgets include efforts to gain federal matching or Medicaid funding, inquiry into those efforts is appropriate, as such funding may be available by the time of trial); Martin v. Taft, 222 F. Supp. 2d 940, 970-73 (S.D. Ohio 2002) (requiring state to seek additional waiver slots may be reasonable accommodation).  Can the State reasonably seek and obtain additional waiver slots with minimal fiscal impact?  See letter, Olmstead Update No. 4, Department of Health & Human Services, Center for Medicaid and State Operations, January 10, 2001 (available at www.cms.hhs.gov/states/letters) ("The state does not have an obligation under Medicaid law to serve more people in the HCBS waiver than the number requested by the state and approved by the secretary.  If other laws (e.g., ADA) require the State to serve more people, the State may do so

using non-Medicaid funds or may request an increase in the number of people permitted under the HCBS waiver. Whether the State chooses to avail itself of possible federal funding is a matter of the State's discretion. Failure to seek or secure Federal Medicaid funding does not generally relieve the State of an obligation that might be derived from other legislative sources (beyond Medicaid), such as the ADA.")

Because summary judgment is only available when there are no disputed issues of material fact, see FED. R. CIV. P. 56(c), such a disposition is not appropriate in this case. To the contrary, both material factual and legal issues remain unresolved and unaddressed by the parties. Neither side has adequately identified the pool of funds and the range of programs properly examined in performing the analysis required by Olmstead. Thus, the parties necessarily have not established facts sufficient to grant or deny the relief sought. Nor has it been established that uncontroverted facts lead inevitably to the legal conclusion that granting plaintiffs' requested accommodation would involve a fundamental alteration in the State's program for delivery of mental health services. At trial, should trial be necessary,

10

both parties will focus, with reasonable specificity, on facts pertinent to the question of "available resources," and the related issue of what other claims placed on those resources would suffer if plaintiffs were accommodated.

For the reasons given, both motions for summary judgment (document no. 55 and document no. 61) are denied. The Clerk of the Court shall schedule a pre-trial conference at which further scheduling and convenient trial dates will be set.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 26, 2004

cc:   Suzanne M. Gorman, Esq.
      Sheila O. Zakre, Esq.

11