**F I L E D**
**Tenth Circuit**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

OKLAHOMA CHAPTER OF THE
AMERICAN ACADEMY OF
PEDIATRICS (OKAAP); COMMUNITY
ACTION PROJECT OF TULSA
COUNTY, OKLAHOMA (CAPTC);
TRACY T., as mother and next friend of
Katelyn M. Wilbanks; LISA P., as mother
and next friend of Joshua Lee O'Neal,
Eric Harman Cammiso, Melissa Ann
Padelford and Mathew Scott Padelford;
ROWENA T., as parent and next friend of
Christy A. Towler, Katherine P. Towler
and Jacob W. Towler; KEVIN T., as
parent and next friend of Christy A.
Towler, Katherine P. Towler and Jacob
W. Towler; JANICE G., as parent and
next friend of Charles A. Scanlan and
Robert M. Garvin; THEODORE G., as
parent and next friend of Charles A.
Scanlan and Robert M. Garvin; REGINA
H., as parent and next friend of Jacob W.
Hercules and Everett L. Hercules; GUS
H., as parent and next friend of Jacob W.
Hercules and Everett L. Hercules;
HEATHER R., as parent and next friend
of Stephanie Moncrief,

     Plaintiffs-Appellants/Cross-
     Appellees,

v.

Nos. 05-5100 & 05-5107

MICHAEL FOGARTY, Chief Executive Officer of the Oklahoma Health Care Authority (OHCA); LYNN MITCHELL, State Medicaid Director; CHARLES ED McFALL, Chairman of the OHCA Board of Directors; T. J. BRICKNER, JR., Vice-Chair of the OHCA Board of Directors; WAYNE HOFFMAN, JERRY HENLEE, RONALD ROUNDS, O.D., GEORGE MILLER, LYLE ROGGOW and JERRY HUMBLE, Members of the OCHA Board of Directors; OKLAHOMA HEALTH CARE AUTHORITY,

Defendants-Appellees/Cross-Appellants.

_____

AMERICAN ACADEMY OF PEDIATRICS; AMERICAN MEDICAL ASSOCIATION, and OKLAHOMA STATE MEDICAL ASSOCIATION,

Amici Curiae.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OKLAHOMA
(D.C. No. 01-CV-0187-CVE-SAJ)**

Louis W. Bullock, Miller, Keffer & Bullock, LLC, Tulsa, Oklahoma (Robert M. Blakemore, Miller, Keffer & Bullock, LLC, Tulsa, Oklahoma; Thomas K. Gilhool and James Eiseman, Jr., Public Interest Law Center, Philadelphia, Pennsylvania, with him on the briefs), for Plaintiffs-Appellants/Cross-Appellees.

Howard J. Pallotta, (Lynn Rambo-Jones with him on the briefs) Oklahoma Health Care Authority, Legal Division, Oklahoma City, Oklahoma, for Defendants-Appellees/Cross-Appellants.

Jonathan S. Franklin and Jessica L. Ellsworth, Hogan & Hartson, L.L.P., Washington,

D.C., filed an amicus curiae brief for the American Academy of Pediatrics, the American Medication Association, and the Oklahoma State Medical Association.

---

Before **TACHA, BRISCOE,** and **HARTZ**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Plaintiffs, two organizations and thirteen children and their parents representing a class of individuals, filed suit under 42 U.S.C. § 1983 claiming that defendants, officials of the State of Oklahoma and the Oklahoma Health Care Authority, violated various provisions of the Medicaid Act by failing to provide Medicaid-eligible children in the State of Oklahoma with necessary health care services, including early and periodic screening, diagnosis, and treatment services.  After conducting a bench trial, the district court found in favor of plaintiffs on some, but not all, of their claims, and issued a permanent injunction requiring defendants to, in pertinent part, conduct a study to determine the provider reimbursement rates necessary to ensure reasonably prompt access to health care for Medicaid-eligible children, and to revise their fee schedule in accordance with that study.  Both sides have now appealed, challenging various aspects of the district court's decision.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291, reverse the judgment of the district court, and remand with directions to enter judgment in favor of defendants.  In doing so, we conclude, contrary to the district court, that the defendants did not violate 42 U.S.C. § 1396a(a)(8)'s "reasonable promptness" requirement by allowing system-wide

delays in treatment of Medicaid beneficiaries or by paying providers insufficient rates for services rendered to Medicaid beneficiaries. We further conclude that 42 U.S.C. § 1396a(a)(10) requires a state Medicaid plan to pay for, but not to directly provide, the specific medical services listed in the Medicaid Act. We also conclude, consistent with our recent decision in Mandy R. ex rel. Mr. and Mrs. R. v. Owens, 464 F.3d 1139 (10th Cir. 2006), that 42 U.S.C. § 1396a(a)(30) does not create a private right of action enforceable by plaintiffs. Finally, we decline to consider plaintiffs' assertion of a private right of action pursuant to 42 U.S.C. § 1396a(a)(43) because the arguments now made on appeal by plaintiffs were neither asserted nor addressed below.

I.

Plaintiff Oklahoma Chapter of the American Academy of Pediatrics (OKAAP) is a non-profit professional organization of pediatricians and pediatric specialists. Plaintiff Community Action Project of Tulsa County, Inc. (CAPTC) is a non-profit organization located in Tulsa, Oklahoma. The individually-named plaintiffs are thirteen children and their parents, all of whom have been designated as representatives of the class certified by the district court. Defendants are officials of the State of Oklahoma and the Oklahoma Health Care Authority (OHCA), the designated agency responsible for implementing and administering Oklahoma's Medicaid program.

Plaintiffs filed this action in March 2001, alleging that defendants' policies and procedures denied or deprived eligible children in the State of Oklahoma of the health and medical care to which they were entitled under federal law. In particular, plaintiffs

-4-

asserted claims under 42 U.S.C. § 1983 to enforce (a) their alleged right pursuant to 42 U.S.C. §§ 1396a(a)(8), 1396a(10)(A), 1396d(a)(4)(B)(2), and 1336d(r) to receive early and periodic screening, diagnostic, and treatment services (EPSDT), (b) their alleged right pursuant to 42 U.S.C. § 1396a(a)(8) to receive necessary care and services with reasonable promptness, and (c) their alleged right pursuant to 42 U.S.C. § 1396a(a)(30)(A) to have provider reimbursement rates set at a sufficient level to assure Medicaid recipients of equal access to quality health care.

The district court, at plaintiffs' request, defined and certified a plaintiff class of children on May 30, 2003. The district court then conducted a bench trial on plaintiffs' claims in April and May 2004. On March 22, 2005, the district court issued lengthy findings of fact and conclusions of law. In its order, the district court dismissed plaintiff OKAAP for lack of standing. The district court also concluded, in pertinent part, that:

> • defendants violated 42 U.S.C. § 1396a(a)(30)(A) by failing to assure that payments were sufficient to enlist enough providers so that care and services were available to Medicaid-eligible children to the extent that such care and services were available to the general population in the geographic areas served by the OHCA; and

> • defendants violated 42 U.S.C. § 1396a(a)(8) by failing to furnish medical assistance with reasonable promptness to all Medicaid-eligible individuals.

At the conclusion of its order, the district court directed the parties to meet and confer with the magistrate judge "in order to reach an agreed proposed injunctive order to be submitted" to the court "consistent with [its] Findings of Fact and Conclusions of Law." Aplt. App. at 396.

On May 19, 2005, after the parties submitted the agreed proposed injunctive order, the district court issued a Final Judgment and Permanent Injunction. Therein, the district court reiterated its legal conclusions and, based upon the two alleged violations outlined above, directed defendants to:

• "institute a fee schedule for fee-for-service physician . . . reimbursement for covered, medically necessary physician services provided to minor children" under the Medicaid program "at the rate for each Current Procedural Terminology . . . Code that equals one hundred percent (100%) of the rate paid by Medicare for physician services as soon as possible within the strictures of" state and federal law;

• "authorize OHCA administrative staff to negotiate a contract . . . with a nationally recognized economic consulting firm to conduct a study to determine the fee-for-service reimbursement rate necessary to assure reasonably prompt access to health care for minor children in the Oklahoma Medicaid Program while also complying with the utilization and efficiency requirements of 42 U.S.C. § 1396a(a)(30)(a)";

• "institute a fee-for-service schedule determined by the consulting firm as necessary to assure reasonably prompt access to health care for minor children in the Oklahoma Medicaid program";

• "[i]n the event that OHCA is unable in good faith to negotiate the contract contemplated by the Final Judgment and Permanent Injunction by August 15, 2005, or if the study contemplated by [the district court] is not completed within six months of the date the contract is executed by the parties, the OHCA shall adjust all Medicaid rates paid to providers so that the rates for covered, medically necessary physician services provided to minor children under the Oklahoma Medicaid Program are sufficient to ensure equal and reasonably prompt access to health care for such minor children";

• "use [their] best efforts to attempt to obtain increased funding from the Oklahoma Legislature for the reimbursement changes mentioned herein; however, a lack of such funding shall not excuse compliance with this Permanent Injunction"; and

• "assure that OHCA immediately adopts and implements new periodicity schedules (for periodic comprehensive medical screening examinations, dental screening examinations and vision screening examinations) after consulting with recognized medical and dental organizations involved in child health care, including OKAAP, Oklahoma State Medical Association, and the Oklahoma Dental Association. In this regard, the OHCA Board of Directors shall invite OKAAP, the Oklahoma State Medical Association, the Oklahoma Dental Association and/or other recognized medical and dental organizations involved in child health care to appoint members to an advisory committee that will meet with the OHCA EPSDT Unit (recently renamed Child Health) staff at least annually to consult on a periodicity schedule for EPSDT services. This advisory committee shall meet no later than forty-five days after the date of this Permanent Injunction."

Aplt. App. at 422-425.

On June 14, 2005, plaintiffs filed a notice of appeal from the district court's Final Judgment and Permanent Injunction, and from the district court's April 20, 2005 Order denying plaintiffs' motion to alter or amend judgment. On June 27, 2005, defendants filed a notice of cross appeal from the district court's Final Judgment and Permanent Injunction, as well as the district court's Findings of Fact and Conclusions of Law.

II.

**A. Plaintiffs' claims under 42 U.S.C. § 1983**

*1) 42 U.S.C. §§ 1396a(a)(8) and (a)(10)(A), 1396d(a)(4)(B) and (r)*

Plaintiffs challenge the district court's ruling on the merits of their claims under § 1983 for alleged violations of 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(10)(A), 1396d(a)(4)(B), and 1396d(r).[1] In particular, plaintiffs contend the district court erred in

---

[1] "We . . . assume without deciding that § 1983 gives the plaintiffs a right of action to enforce" these provisions. Mandy R., 464 F.3d at 1143.

applying a "substantial compliance" standard in determining whether defendants met what plaintiffs allege, and the district court agreed, were defendants' obligations under these statutes to furnish comprehensive medical screening examinations, preventive dental services and necessary medical treatment to members of the class of individual plaintiffs. Because this issue hinges on the interpretation of these federal statutes, we apply a de novo standard of review. Shivwits Band of Paiute Indians v. Utah, 428 F.3d 966, 978 (10th Cir. 2005).

Sections 1396a(a)(8) and (a)(10)(A) of Title 42 provide, in pertinent part, as follows:

> (a) A State plan for medical assistance must –
>     * * *
>     (8) provide . . . that such [medical] assistance shall be furnished with reasonable promptness to all eligible individuals;
>     * * *
>     (10) provide –
>         (A) for making medical assistance available, including at least the care and services listed in paragraphs (1) through (5), (17) and (21) of section 1396d(a) of this title, to . . . all individuals . . . who are receiving aid or assistance under any [approved State Medicaid] plan . . . .

42 U.S.C. § 1396a(a)(8), (10)(A).

In turn, sections 1396d(a)(4)(B) and (r) provide as follows:

> For purposes of this subchapter --

> (a) **Medical assistance**
>     The term "medical assistance" means payment of part or all of the cost of the following care and services . . . for individuals . . .
>         (4) . . . (B) early and periodic screening, diagnostic, and treatment services (as defined in subsection (r) of this section) for individuals

who are eligible under the plan and are under the age of 21 . . . .
* * *


(r) **Early and periodic screening, diagnostic, and treatment services**
    The term "early and periodic screening, diagnostic, and treatment services" means the following items and services:
        (1) Screening services–
            (A) are provided–
                (i) at intervals which meet reasonable standards of medical and dental practice, as determined by the State after consultation with recognized medical and dental organizations involved in child health care and, with respect to immunizations under subparagraph (B)(iii), in accordance with the schedule referred to in section 1396s(c)(2)(B)(i) of this title for pediatric vaccines, and
                (ii) at such other intervals, indicated as medically necessary, to determine the existence of certain physical or mental illnesses or conditions; and
            (B) which shall at a minimum include–
                (i) a comprehensive health and developmental history (including assessment of both physical and mental health development),
                (ii) a comprehensive unclothed physical exam,
                (iii) appropriate immunizations (according to the schedule referred to in section 1396s(c)(2)(B)(i) of this title for pediatric vaccines) according to age and health history,
                (iv) laboratory tests (including lead blood level assessment appropriate for age and risk factors), and
                (v) health education (including anticipatory guidance).
        (2) Vision services–
            (A) which are provided–
                (i) at intervals which meet reasonable standards of medical practice, as determined by the State after consultation with recognized medical organizations involved in child health care, and
                (ii) at such other intervals, indicated as medically necessary, to determine the existence of a suspected illness or condition; and
            (B) which shall at a minimum include diagnosis and treatment

for defects in vision, including eyeglasses.

(3) Dental services–

    (A) which are provided–

        (i) at intervals which meet reasonable standards of dental practice, as determined by the State after consultation with recognized dental organizations involved in child health care, and

        (ii) at such other intervals, indicated as medically necessary, to determine the existence of a suspected illness or condition; and

    (B) which shall at a minimum include relief of pain and infections, restoration of teeth, and maintenance of dental health.

(4) Hearing services–

    (A) which are provided–

        (i) at intervals which meet reasonable standards of medical practice, as determined by the State after consultation with recognized medical organizations involved in child health care, and

        (ii) at such other intervals, indicated as medically necessary, to determine the existence of a suspected illness or condition; and

    (B) which shall at a minimum include diagnosis and treatment for defects in hearing, including hearing aids.

(5) Such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.

Nothing in this subchapter shall be construed as limiting providers of early and periodic screening, diagnostic, and treatment services to providers who are qualified to provide all of the items and services described in the previous sentence or as preventing a provider that is qualified under the plan to furnish one or more (but not all) of such items or services from being qualified to provide such items and services as part of early and periodic screening, diagnostic, and treatment services. The Secretary shall, not later than July 1, 1990, and every 12 months thereafter, develop and set annual participation goals for each State for participation of individuals who are covered under the State plan under this subchapter in early and periodic screening, diagnostic, and treatment services.

42 U.S.C. § 1396d(a)(4)(B), (r).

Purporting to apply § 1396a(a)(8)'s "reasonable promptness" requirement, the

district court held as follows:

> 32.    Plaintiffs have offered substantial evidence that the delays in treatment for children with specific conditions are medically inappropriate. Importantly, plaintiffs have shown that system-wide delays in treatment exist and have presented convincing evidence that those delays are not reasonable.  In violation of 42 U.S.C. § 1396a(a)(8), defendants are not ensuring that medical assistance is furnished with reasonable promptness to all eligible individuals.

> 33.    The Court is aware of Bruggeman v. Blagojevich, 324 F.3d 906, 910 (7th Cir. 2003), in which the court held that Illinois officials' failure to adopt a plan for expanding the number of intermediate care facilities for the developmentally disabled in another part of the state did not violate 42 U.S.C. § 1396a(a)(8).  In so holding, the court remarked:

>> the statutory reference to "assistance" appears to have reference to *financial* assistance rather than to actual medical services, though the distinction was missed in Bryson v. Shumway, 308 F.3d 79, 81 (1st Cir. 2002), and Doe v. Chiles, 136 F.3d 709, 714, 717 (11th Cir. 1998).  Medicaid is a payment scheme, not a scheme for state-provided medical assistance, as through state-owned hospitals.  The regulations that implement the provision indicate that what is required is a prompt determination of eligibility and prompt provision of funds to eligible individuals to enable them to obtain the covered medical services that they need, see 42 C.F.R. §§ 435.91(a), .930(a)-(b); a requirement of prompt treatment would amount to a direct regulation of medical services.

> Id. at 910.  The Court finds that this distinction, while accurate, does not preclude a finding in this case that defendants have violated § 1396a(a)(8).  Without financial assistance (provider reimbursement) sufficient to attract an adequate number of providers, reasonably prompt assistance is effectively denied.

Aplt. App. at 378.

We reject the district court's conclusions.  In our recent decision in Mandy R., we agreed with the Seventh Circuit's decision in Bruggeman that the term "medical assistance," as employed in § 1396a(a)(8), refers "'to financial assistance rather than to actual medical services.'"  464 F.3d at 1143 (quoting Bruggeman, 324 F.3d at 910).  In turn, we interpreted § 1396a(a)(8) as "requir[ing] any state participating in Medicaid to pay promptly . . . for medical services when the state is presented with the bill."  Id.  As noted by defendants, this interpretation is clearly contrary to the plaintiffs' assertion, and the district court's apparent conclusion, that § 1396a(a)(8) makes a state Medicaid program directly responsible for ensuring that the medical services enumerated in the Medicaid Act (i.e., those that are reimbursable) are actually provided to Medicaid beneficiaries in a reasonably prompt manner.

The district court also erred, given our holding in Mandy R., in concluding that defendants violated § 1396a(a)(8)'s "reasonable promptness" requirement by paying providers insufficient rates for services rendered to Medicaid beneficiaries.  Although the district court apparently concluded, and perhaps correctly so, that low rates of reimbursement reduce the number of providers available to Medicaid beneficiaries, and in turn increase the time Medicaid beneficiaries must wait to receive medical services from available providers, this conclusion does not mean that defendants failed (or will fail in the future) to be reasonably prompt in paying for services actually rendered by available providers, as required by § 1396a(a)(8).  Indeed, if the district court's theory were correct, it would broaden § 1396a(a)(8) far beyond its intended scope, and would require federal

-12-

courts to engage in what the Third Circuit has described as the "onerous" task of "evaluating whether a state's Medicaid reimbursement rates are 'reasonable and adequate.'" Chiles, 136 F.3d at 717. Thus, we agree with defendants that the district court erred when it directed defendants to conduct a study of rates, costs and services, and then to use the study to correct what the district court concluded were too-low rates of reimbursement. Likewise, we agree with defendants that the district court erred in requiring rates to be set at a level that would ensure a two-thirds "level of participation" among physicians in the State of Oklahoma.

To be sure, plaintiffs' claims in this case differ slightly from those in Mandy R. in that, in addition to § 1396a(a)(8), they also rely on the provisions of § 1396a(a)(10)(A). Although Mandy R. did not address the meaning of § 1396a(a)(10)(A), the fact that plaintiffs have included that as a basis for their claims does nothing to change the outcome. As noted above, subsection (a)(10)(A) simply requires a state Medicaid plan to provide "medical assistance," as that phrase is uniquely defined in the Medicaid Act, for specific medical services listed in the Medicaid Act, including EPSDT services. In other words, subsection (a)(10)(A) requires a state Medicaid plan to pay for all such medical services, not, as plaintiffs suggest, to directly provide them.

Finally, plaintiffs' "substantial compliance" arguments are clearly wrong because they hinge on the mistaken view that the above-quoted provisions of the Medicaid Act "clearly and unambiguously require states to furnish EPSDT services to all eligible individuals under the age of 21." Aplt. Br. at 31. As we have discussed, the term

-13-

"medical assistance," as used throughout the Medicaid Act, refers to the payment of all or part of the cost of the care and services specifically described in the act. That is, as noted in Mandy R., the Medicaid Act requires participating states to provide beneficiaries financial assistance rather than actual medical services. Thus, not only do the statutes cited by plaintiffs not obligate defendants to ensure that EPSDT services are "fully" delivered to the plaintiff class, those statutes impose no obligation whatsoever on defendants to deliver any medical services. Rather, as we concluded in Mandy R., defendants' obligation under these statutes is to pay promptly for the medical services outlined in the Medicaid Act, including EPSDT services.

*2) 42 U.S.C. § 1396a(a)(30)(A)*

Both plaintiffs and defendants assert challenges to the district court's final judgment granting injunctive relief based upon defendants' alleged violation of 42 U.S.C. § 1396a(a)(30)(A). We find it unnecessary to address any of these arguments in detail, however, because we recently held in Mandy R. that § 1396a(a)(30)(A) does not give rise to an enforceable private right on behalf of Medicaid beneficiaries and providers that can be pursued under § 1983. 464 F.3d at 1148. Thus, we simply conclude that the district court erred in holding that defendants violated § 1396a(a)(30)(A), and in turn granting injunctive relief in favor of plaintiffs based upon that purported violation.

*3) 42 U.S.C. § 1396a(a)(43)*

In a supplemental brief filed after the issuance of Mandy R., plaintiffs argue for the first time on appeal that 42 U.S.C. § 1396a(a)(43) "create[s] enforceable rights" in favor

of Medicaid recipients, "including the right to receive actual [EPSDT] services." Aplt. Supp. Br. at 6. Plaintiffs further argue that "[i]f, as the trial court found here, children are not *receiving* the care and services they are entitled to, then the State has failed to comply with" § 1396a(a)(43). Id. at 8 (italics in original).

We conclude these arguments are not properly before us. "Absent authorization from this court, a party is generally precluded from raising issues in a supplemental brief that were not addressed in the opening brief." United States v. Lawrence, 405 F.3d 888, 908 n.15 (10th Cir. 2005). Moreover, we are not persuaded, after reviewing the record on appeal, that the new arguments asserted by plaintiffs were adequately raised or decided below. See United Steelworkers of Am. v. Or. Steel Mills, Inc., 322 F.3d 1222, 1228 (10th Cir. 2003) (noting that arguments not raised below will not be considered for the first time on appeal unless they are purely matters of law whose proper resolution is certain); United States v. Easter, 981 F.2d 1549, 1556 n.5 (10th Cir. 1992) (refusing to address issue not decided below because it was "a fact-dependant challenge and [there was] an insufficient record" on appeal). While § 1396a(a)(43) was cited in the first amended complaint and also referenced in the pretrial order, there is no indication in the record on appeal that the district court was asked to determine, or in fact did determine, (a) whether § 1396a(a)(43) creates an enforceable private right on behalf of Medicaid beneficiaries that can be pursued under § 1983, and (b) whether defendants violated the specific provisions of § 1396a(a)(43) that plaintiffs now assert require the provision of actual health care services.

### B. *Dismissal of plaintiff OKAAP for lack of standing*

Plaintiff OKAAP, a non-profit professional organization of pediatricians and pediatric sub-specialists, contends the district court erred in dismissing it from the suit for lack of standing. Our conclusions on the parties' other issues, which necessitate reversal of the district court's judgment, have rendered this issue moot.

The judgment of the district court is REVERSED, and the case REMANDED to the district court with directions to enter judgment in favor of defendants on all claims.