Affirmed in part, vacated in part, and remanded by published opinion. Judge GREGORY wrote the opinion, in which Judge KING concurred. Judge WHITNEY wrote a separate opinion concurring in the judgment in part and dissenting in part.
OPINION
GREGORY, Circuit Judge:
Sue Doe, who has developmental disabilities including epilepsy, mild mental retardation, and cerebral palsy, filed this action concerning her application for Medicaid services from the state of South Carolina. The district court granted summary judgment to Appellees: the South Carolina Department of Disabilities and Special Needs, the South Carolina Department of Health and Human Services, and various officials at the helm of the two departments. Because Doe’s two claims on appeal are not, as the district court found, moot, but one of her claims nonetheless fails as a matter of law, we affirm in part and vacate and remand in part.
I.
Medicaid is an optional, federal-state program through which the federal government provides financial assistance to states for the medical care of needy individuals. Wilder v. Va. Hosp. Ass’n, 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). Once a state elects to participate in the program, it must comply with all federal Medicaid laws and regulations. Id. The South Carolina Department of Health and Human Services (“DHHS”) is the state agency responsible for administering and supervising Medicaid programs in South Carolina. The South Carolina Department of Disabilities and Special Needs (“DDSN”) has specific authority over the state’s treatment and training programs for people with mental retardation and related disabilities.
This case involves the Medicaid waiver program created by 42 U.S.C. § 1396n(c) (2000), which permits states to waive the requirement that persons with mental retardation or a related disability live in an institution in order to receive certain Medicaid services. See generally Bryson v. Shumway, 308 F.3d 79, 82 (1st Cir.2002) (“[The program] allow[s] states to experiment with methods of care, or to provide care on a targeted basis, without adhering to the strict mandates of the Medicaid system.”). When an individual in South Carolina applies for DDSN services, including the waiver program, DHHS first determines whether the individual is eligible for Medicaid funding. Thereafter, DDSN determines whether the individual is eligible for DDSN services and, if so, what “level of care” the individual requires. To be given the option under the waiver program of receiving services at home or in the community, rather than in an institution, individuals must first qualify for the Intermediate Care Facility for the Mentally Retarded (“ICF/MR”) level of care — that is, they must meet the criteria necessary to reside in an institution like a nursing home. If approved, waiver services are provided in a variety of settings including, in order of restrictiveness: (1) a Supervised Living Program II (“SLP II”), an apartment where recipients of DDSN services live together; (2) a Community Training Home I (“CTH I”), a private foster home where a recipient of DDSN services resides with a family, one member *352 of whom is a trained caregiver; and (3) a Community Training Home II (“CTH II”), a group home with live-in caregivers for four or fewer recipients of DDSN services. Appeals from DDSN decisions about the services, if any, it will provide are taken to a DHHS hearing officer and, after that, to the state of South Carolina’s Administrative Law Judge Division.
Doe applied for services under DDSN’s waiver program in July 2002, after previous requests for DDSN services had been denied in 2000 and 2001. In December 2002, without making a determination as to Doe’s eligibility for the waiver program, DDSN placed Doe on the non-critical waiting list for the program. Doe appealed this decision to DHHS, adding a claim that DDSN failed to serve her within a reasonable amount of time as required by federal regulations. While the appeal was pending, DDSN moved Doe to the top of the critical waiting list for the program and developed a plan of care for her, which largely involved her living at home with her mother where she would receive various in-home services. DDSN then moved to dismiss Doe’s appeal.
At the March 2003 hearing on DDSN’s motion to dismiss, Doe conceded that DDSN had moved her to the top of the critical waiting list and had found her eligible for services under the waiver program earlier that month. Finding that all the appealed issues had already been resolved in Doe’s favor, the DHHS hearing officer dismissed Doe’s appeal. Doe did not appeal the dismissal to the state’s Administrative Law Judge Division. At the end of March, however, Doe learned that she had been terminated from the waiver program. She requested a hearing on this decision and, several months later, learned that her Medicaid eligibility was to terminate as well (although it never did).
During May and June of 2003, Doe requested another hearing on the grounds that she had not yet received the services promised by DDSN in her plan of care. DDSN protested that Doe’s family was not cooperating in availing themselves of those services. The DHHS hearing officer held Doe’s request for an appeal in abeyance because he considered Doe’s Medicaid eligibility to be in question. Doe had also demanded immediate CTH I or CTH II residential placement (rather than continued in-home services), with a provider of her choice, because her mother, whose mental health was rapidly declining, was no longer able to care for her and was moving out of state without Doe. Doe voiced her opposition to DDSN’s chosen provider for residential services, the Bab-cock Center, based on reports that the center had a history of abusing and neglecting residents. In response to Doe’s petitions, DDSN requested proof of her critical family circumstances before taking action.
On June 9, 2003, Doe filed this action, alleging violations of the Medicaid Act, 42 U.S.C. §§ 1396-1396v, the Americans with Disabilities Act of 1990, Pub.L. No. 101— 336, 104 Stat. 327 (codified as amended in scattered sections of 42 U.S.C.), and various state laws. Only two of Doe’s original seven claims are at issue here: (1) a claim under 42 U.S.C. § 1983 that Appellees “have deprived Doe of Medicaid services— namely, residential habilitation services and freedom of choice of providers of those services” and (2) a claim that Appellees have “failed to provide with reasonable promptness the residential habilitation and other Medicaid services Doe has requested since 2000” in violation of § 1396a(a)(8) of the Medicaid Act. Doe sought an order directing DDSN to provide her with residential habilitation services from the provider of her choice, payment of her medical expenses, and fees and costs.
On July 2, 2003, Doe filed a motion for a preliminary injunction seeking relief sub *353 stantially similar to that requested in her complaint. Doe’s mother had by then left South Carolina, and her father was unable to take her into his home. Accordingly, shortly after the hearing on the motion for a preliminary injunction, DDSN placed Doe in a CTH II (group home) facility in Newberry, South Carolina, where she received respite (or temporary) services. DDSN maintains that it did so because of Doe’s family circumstances, not because she was qualified for that most-restrictive setting; in fact, DDSN found Doe to need a CTH I (foster home) or SLP II (apartment) setting. Doe continues to reside at the Newberry facility. In light of Doe’s placement at Newberry, the district court denied Doe’s motion for preliminary in-junctive relief.
Appellees then moved for summary judgment. At a hearing on the motion in September 2004, Doe explained that she had consistently requested CTH II residential habilitation services in her home community, near Columbia, South Carolina. Doe explained that she could not avail herself of these providers until DDSN approved the placement, yet DDSN would only approve a CTH I placement. Doe further explained that, although DDSN ultimately found her eligible for the waiver program and is now providing her with CTH II residential services, DDSN considers Doe’s current CTH II placement at Newberry temporary and has acknowledged that Doe may be moved out of residential facilities altogether depending on the setting DDSN ultimately finds her to require. Doe therefore argued against summary judgment on the grounds that she has never received the residential services she requested by the provider she chose, nor a fair hearing on the merits, and that she is being threatened with termination of services altogether. Doe admitted at the hearing that she had already prevailed on three causes of action in her complaint.
On December 9, 2004, the district court dismissed as moot three of Doe’s causes of action — including the two on appeal here' — ■ on the grounds that at the hearing on the motion for summary judgment, Doe admitted that she had already received the relief requested in those counts. The district court granted summary judgment to Ap-pellees on Doe’s remaining four counts and denied her request for attorney’s fees and for reconsideration. Doe has appealed, asking us to determine (1) whether her claim that Appellees have deprived her of her right to reasonably prompt residential habilitation services is moot because Ap-pellees have provided Doe with temporary services, and (2) whether her claim that she has been denied the freedom of choice of qualified providers of Medicaid services is moot when Appellees have provided her services from a provider they, and not Doe, chose. We review the district court’s summary judgment ruling de novo, viewing the facts in the light most favorable to Doe as the non-moving party and drawing all reasonable inferences in her favor. See Varghese v. Honeywell Int'l, Inc., 424 F.3d 411, 416 (4th Cir.2005).[1]
II.
Doe first appeals the district court’s decision to dismiss as moot her § 1983 claim that Appellees violated the Medicaid Act by providing her with temporary respite services instead of providing her, with reasonable promptness,[2] the resi *354 dential habilitation services approved in her 2003 plan of care.[3] Section 1396a(a)(8) of the Act requires that state “medical assistance ... be furnished with reasonable promptness to all eligible individuals.” Federal regulations direct state agencies to determine an applicant’s eligibility for Medicaid within ninety days of the date of application and to “[f]urnish Medicaid promptly to recipients without any delay caused by the agency’s administrative procedures.” 42 C.F.R. §§ 435.911, 435.930 (2002).
Appellees argue that Doe’s reasonable promptness claim is moot because Appellees began providing Doe with some services before the DHHS hearing on their motion to dismiss, and certainly before the federal court hearing on their motion for summary judgment. Moreover, Appellees argue, Doe conceded the claim’s “mootness” by answering in the affirmative when the district court asked her whether she had already prevailed on this claim at the DHHS hearing.
A.
A case is moot “when the issues presented are no longer ‘live’ or the parties lack a legally cognizable interest in the outcome.” Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). Where, as here, a defendant’s voluntary conduct is the basis for the potential mootness, it is “well settled that [the] defendant’s voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.” Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (quotation marks and citations omitted). Here, Doe challenges Appellees’ failure to provide her with residential habilitation services promptly. Viewing the facts in the light most favorable to Doe, Appellees have not yet voluntarily ceased this conduct: by their own admission, Doe is “only in this Newberry CTH II for respite [services] or until her true status is determined.” J.A. 384. Therefore, the issues presented in Doe’s reasonable promptness claim continue to be live and the parties continue to have a legally cognizable interest in the outcome.
A separate question is whether, by agreeing with the district court that she “prevailed” on her reasonable promptness claim (without so much as probing the district court’s usage of the term “prevail” or explaining to the court the breadth of her claim, as she has done before this Court) and now seeks only attorney’s fees, Doe waived her claim. “[F]ederal law is well-settled that waiver is the voluntary and intentional relinquishment of a known right, and courts have been disinclined lightly to presume that valuable rights have been conceded in the absence of clear evidence to the contrary.” United States v. Stout, 415 F.2d 1190, 1192-93 (4th Cir.1969). Doe’s summary judgment and appellate briefs make clear that, whatever misstatements or understatements she *355 made during the summary judgment hearing, she did not intend to relinquish her right to have the district court consider her reasonable promptness claim on its merits. We find that her exchange with the district court at the summary judgment hearing did not constitute a waiver of the claim.
B.
Having determined that Doe’s reasonable promptness claim is neither moot nor waived, we consider whether Doe may enforce § 1396a(a)(8) through a § 1983 action. Appellees argue that she may not because Congress provided a comprehensive remedial scheme for individual state Medicaid cases, thereby precluding § 1983 as a means of review. The district court, having dismissed Doe’s claim as moot, did not reach this question.[4]
Section 1983 imposes liability on any person who, under the color of state law, deprives another person “of any rights, privileges, or immunities secured by the Constitution and laws.” Some statutes foreclose private enforcement by § 1983. In absence of an “express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement[,]” the Supreme Court will find “private enforcement foreclosed only when the statute itself creates a remedial scheme that is sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983.” Wilder, 496 U.S. at 520-21, 110 S.Ct. 2510 (quotation marks and citations omitted).
Using this rule, the Supreme Court has decided that at least one provision of the Medicaid Act does not preclude individual enforcement through a § 1983 action. In Wilder, the Court observed that only twice has it found “a remedial scheme established by Congress sufficient to displace the remedy provided in § 1983.” Id. at 521, 110 S.Ct. 2510 (citing Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), and Middlesex County Sewerage Auth. v. Nat’l Sea Clammers Ass’n, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). The Court subsequently concluded that “[t]he Medicaid Act contains no comparable provision for private judicial or administrative enforcement.” Id. It therefore allowed health care providers to sue the Commonwealth of Virginia under § 1983 for violating a provision of the statute, § 1396a(a)(13)(A), regarding reimbursement for providers. Fifteen years later, the Supreme Court cited Wilder when it listed the Medicaid Act as an example of a federal statute for which § 1983 is available, given that the statute does not provide a private judicial remedy for rights that have been violated. See City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 121-22, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005).
Because Wilder involved a provision of the Medicaid Act very different from the provision at issue here, we analyze the provision Doe invokes, § 1396a(a)(8), according to the guidelines set forth in Blessing v. Freestone, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), to determine whether that provision creates a private right enforceable under § 1983. See Blessing, 520 U.S. at 342, 117 S.Ct. 1353 (noting the importance of “distinguishing among the numerous rights that might have been created by [the] federally funded” program at issue). Blessing listed three factors that this Court must consider in determining *356 whether a statutory provision gives rise to an individual right:
First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so “vague and amorphous” that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than prec-atory, terms.
Id. at 340-41, 117 S.Ct. 1353 (citations omitted). Even when the presence of these three factors creates a presumption that a statutory provision gives rise to an individual right, we must consider whether Congress expressly or impliedly foreclosed a remedy under § 1983. See Blessing, 520 U.S. at 341, 117 S.Ct. 1353. As a rule, “where the text and structure of a statute provide no indication that Congress intended] to create new individual rights, there is no basis for a private suit.” Gonzaga Univ. v. Doe, 536 U.S. 273, 286, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). This is so because “rights, not the broader or vaguer ‘benefits’ or ‘interests,’ [are to] be enforced under the authority of [§ 1983].” Id. at 283, 122 S.Ct. 2268.
Applying the Blessing test to the reasonable promptness provision found in § 1396a(a)(8), we conclude that the provision gives rise to a right enforceable under § 1983.[5] First, the provision is expressly intended to benefit “all” individuals eligible for Medicaid assistance, a group that, the parties do not dispute, includes Doe. See § 1396a(a)(8). Second, the provision is not so “vague and amorphous” that the judiciary cannot competently enforce it: the provision is clear that the standard for informing applicants of their eligibility for Medicaid services is “reasonable promptness” and the relevant federal and state regulations and manuals define reasonable promptness as forty-five days or ninety days, depending on the applicant. See, e.g., 42 C.F.R. § 435.911; South Carolina Medicaid Manual, cited at J.A. 242; United States Department of Health & Human Services Center for Medicaid and State Operations, Olmstead Update No: 4, at J.A. 290. Third, the provision uses mandatory rather than precatory terms: it states that plans “must” provide for assistance that “shall” be delivered with reasonable promptness. See § 1396a(a)(8).
Finally, the Medicaid Act does not explicitly forbid recourse to § 1983. Wilder, 496 U.S. at 521, 110 S.Ct. 2510. Nor does the Act impliedly forbid such recourse: although the Act provides that states should adopt a fair hearing process, the Act does not contain a “comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.” Blessing, 520 U.S. at 341, 117 S.Ct. 1353 (emphases added). The statute merely requires state plans “to provide for granting an opportunity for a fair hearing before the State agency [responsible for the Medicaid program] to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness,” § 1396a(a)(3), and generally states that the United States Secretary of Health and Human Services should withhold future Medicaid payments to states, that fail to comply with § 1396a of the Act, see § 1396c. Medicaid regula *357 tions regarding the fair hearing process are more extensive, but they are not incompatible with § 1983 enforcement. See 42 C.F.R. § 431.200-250 (2002); Blessing, 520 U.S. at 348, 117 S.Ct. 1353 (commenting specifically upon the “limited state grievance procedures for individuals” in the Medicaid Act); id. (holding that “a plaintiffs ability to invoke § 1983 cannot be defeated simply by [t]he availability of administrative mechanisms to protect the plaintiffs interests” (alteration in original and quotation marks omitted)); accord Wilder, 496 U.S. at 521, 523, 110 S.Ct. 2510.
We note that three circuits have engaged in similar analysis of § 1396a(a)(8) and reached the same conclusion. See Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 183 (3rd Cir.2004) (holding that an analysis based upon Gonzaga, Blessing, and other cases “compels the conclusion that the provisions invoked by plaintiffs— 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(10), and 1396d(a)(15) — unambiguously confer rights vindicable under § 1983”); Bryson v. Shimway, 308 F.3d 79, 88-89 (1st Cir.2002) (holding that § 1396a(a)(8) is enforceable by Medicaid recipients under § 1983); Doe ex rel. Doe v. Chiles, 136 F.3d 709, 714 (11th Cir.1998) (same).[6] In sum, Doe may proceed under § 1983 to address any failure by Appellees to comply with the reasonable promptness provision of the Medicaid Act. Because her claim is neither moot nor waived, we vacate the district court’s dismissal of her claim and remand for further proceedings.
III.
Doe next appeals the district court’s decision to dismiss as moot her § 1983 claim that Appellees violated the freedom of choice provision in § 1396a(a)(23) of the Medicaid Act. That provision requires state Medicaid plans to provide that any recipient of Medicaid assistance “may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required ... who undertakes to provide him such services.” § 1396a(a)(23). In short, the provision “gives recipients the right to choose among a range of qualified providers, without government interference.” O’Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 785, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) (emphasis omitted).
Doe contends that Appellees have violated this provision by refusing to approve her for placement at her choice of a CTH II facility in her home community. Doe is not mollified by her current placement at a CTH II facility in Newberry because New-berry is not her home' community and because DDSN has admitted that it placed her there only temporarily because of her family circumstances, not because of her actual need for a CTH II setting.
A.
Aside from a reference in a string citation to § 1902(23) of the Social Security Act, which is the same provision as § 1396a(a)(23) of the Medicaid Act, Doe did not cite § 1396a(a)(23) below. This appeal marks the first time Doe cites § 1396a(a)(23) specifically. Citing our rule that “issues raised for the first time on appeal are generally not considered absent exceptional circumstances,” Wheatley v. Wicomico County, 390 F.3d 328, 334 (4th Cir.2004), Appellees argue that this Court should not consider Doe’s claim.
*358 Doe, however, has not raised a “new theory at the eleventh hour” or made “a last-minute switch in strategy,” the type of tactics this Court’s rule is designed to discourage. Id. at 335. Below, Doe did not cite the provision of the Medicaid Act upon which she relies, but her complaint did claim that Appellees have denied her the right to choose among providers and she did argue that claim before the district court.
Moreover, the district court did “pass upon” Doe’s freedom of choice claim, albeit without reference to § 1396a(a)(23). Cf. Bakker v. Grutman, 942 F.2d 236, 242 (4th Cir.1991) (“Generally, a federal appellate court may not consider an issue which was not passed upon by the trial court.”). At the hearing on Appellees’ motion for summary judgment, the court repeatedly sought confirmation that Doe’s position was that she had been denied the right to move into the CTH II facility of her choice. The court asked both parties whether Doe, Doe’s treatment team, or DDSN had the right to choose among the various settings for rehabilitation services, and on what authority the parties relied for their divergent points of view. The court also inquired whether Doe had taken the proper procedural steps in requesting a specific placement by DDSN and whether the court had jurisdiction to review DDSN’s determination that Doe required a CTH I setting.
We will not, therefore, refuse to consider Doe’s freedom of choice claim on the ground that the question was not considered below. The record is clear that the district court considered the claim and simply determined that it was moot.
B.
We find that Doe’s freedom of choice claim is not moot, but lacks merit. Doe’s position is that once DDSN finds her to qualify for the ICF/MR level of care, she has a choice among the qualified providers operating the various settings that are- alternatives to living in an institution (e.g., a SLP, CTH I, or CTH II setting). Because DDSN has consistently relayed to her that it will approve funding only for a CTH I setting and not a CTH II setting, Doe maintains that she is being denied her right to choose among qualified providers.
The record does not support Doe’s position. As noted earlier, DDSN determines whether a recipient qualifies for the ICF/MR level of care. Then, after the recipient exercises his or her right to choose home-based and community-based services rather than ICF/MR services (that is, services in an institution or nursing home), DDSN determines which setting will meet the recipient’s needs — here, Doe’s need for residential habilitation services — whether it be an apartment (SLP I), a foster home (CTH I), or a group home (CTH II). DDSN must determine the services required because it must insure that it meets the needs of the recipient and that it places the recipient in the least restrictive environment, as required by state and federal law. See, e.g., Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999); S.C.Code Ann. § 44-20-20 (2006). The Associate Director of DDSN swore out an affidavit stating that DDSN selects the appropriate setting, a 2003 letter from the General Counsel of DDSN confirms as much, and an official from DDSN testified to the same at the hearing on Doe’s motion for a preliminary injunction.
Doe has presented nothing that would contradict this evidence. Her counsel’s testimonial argument that, in her ten years’ experience, the recipient and his or her family, rather than DDSN, choose the appropriate setting is unavailing. The cases Doe cites for the proposition that the Medicaid Act empowers recipients to *359 choose among CTH I, CTH II, and SLP settings — Olmstead and Antrican v. Odom, 290 F.3d 178 (4th Cir.2002) — do not stand for that proposition. Further, Doe has not cited any statutory provision, regulation, or policy directive stating that she has a right to choose among various settings — or, as she terms it, levels of service — and she has not presented a witness to testify as much. Section 1396n of the Act merely requires states to inform participants in the waiver program of “the feasible alternatives, if available under the waiver, at the choice of individuals, to the provision of ... services in an intermediate care facility for the mentally retarded.” § 1396n(c)(2)(C) (emphases added). The only choice referred to in the Medicaid regulations Doe placed into the record is a choice between institutional or home-based and community-based services as a part of the waiver program, a choice that Doe has already been given. See 42 C.F.R. § 441.302(d)(2) (2002). She chose the latter. Finally, the one policy manual in the record, a 2001 United States Department of Health and Human Services update for states, supports Appellees’ position that DDSN, and not Doe, determines the appropriate setting for her services. The manual states:
A State is obligated to provide all people enrolled in the waiver with the opportunity for access to all needed services covered by the waiver and the Medicaid State plan.... This does not mean that all waiver participants are entitled to receive all services that theoretically could be available under the waiver. The State may control procedures based on the need that individuals have for services covered under the waiver. An individual’s right to receive a service is dependent on a finding that the individual needs the service, based on appropriate assessment criteria that the State develops and applies fairly to all waiver enrollees.
J.A. 289-90. Thus, we are left to conclude that DDSN selects the appropriate setting for the provision of waiver services. Once a setting is selected, recipients have a choice of qualified providers among those who offer services in the setting DDSN has approved; this is the freedom of choice that 1396a(a)(23) guarantees.
In this case, at the time of the summary judgment proceedings, DDSN had consistently evaluated Doe as needing a CTH I setting.[7] Therefore, Doe had a right to choose among providers of CTH I services, not a right to choose to live in any CTH II setting she wished. Cf. Kelly Kare, Ltd. v. O’Rourke, 930 F.2d 170, 178 (2d Cir.1991) (reading O’Bannon as holding that a Medicaid recipient’s freedom of choice rights are necessarily dependent on a provider’s ability to render services). Doe currently resides in a CTH II facility at Newberry but, as stated above, DDSN made this placement because her case became an emergency one, not because DDSN determined that a CTH II setting was appropriate. Cf. O’Bannon, 447 U.S. at 786, 100 S.Ct. 2467 (“[Wjhile a patient has a right to continued benefits to pay for care in the qualified institution of his choice, he has no enforceable expectation of continued benefits to pay for care in an institution that has been determined to be unqualified.”).
*360 Section 1396a(a)(23) “is clearly drawn to give Medicaid recipients the right to receive care from the Medicaid provider of their choice, rather than the government’s choice.” Silver v. Baggiano, 804 F.2d 1211, 1217 (11th Cir.1986), abrogated on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). Appellees have not violated this provision: Doe has a choice of providers, so long as the provider operates a CTH I facility, the kind of setting DDSN has determined would constitute the least restrictive environment for Doe. We therefore affirm, but on different grounds, the district court’s dismissal of Doe’s freedom of choice claim. See Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 222 (4th Cir.2002) (observing that we “can affirm on any basis fairly supported by the record”).
C.
Because Doe’s freedom of choice claim fails as matter of law, we do not find it necessary to decide whether § 1396a(a)(23) confers a private right on individuals that may be enforced under § 1983. Even assuming Doe may proceed under § 1983 to enforce § 1396a(a)(23), Appellees are entitled to summary judgment on Doe’s claim. Cf. Burks v. Lasker, 441 U.S. 471, 475-76, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979) (holding that the “question whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided”).
IV.
For the foregoing reasons, we affirm the district court’s grant of summary judgment in Appellees’ favor on Doe’s freedom of choice claim, vacate the district court’s grant of summary judgment on Doe’s reasonable promptness claim, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

. There have been state administrative proceedings in Doe's case since she noted her appeal to this Court. We do not consider the outcome of these proceedings because the outcome has no effect, preclusive or otherwise, on the issues Doe raises before this Court.

. Given the paucity of references to "reasonable promptness” in Doe’s appellate brief, *354 Appellees argue that Doe has abandoned this issue on appeal. We are able to discern Doe's claim from her brief and therefore disagree.

. Respite services and residential habilitation services are distinct. Respite care, which Doe is currently receiving, "is furnished on a short-term basis due to the regular care giver’s absence or need for relief.” Benjamin H. v. Ohl, No. 3:99-0338, 1999 WL 34783552, at *2 (S.D.W.Va. July 15, 1999). Residential habilitation, which Doe has requested, "helps recipients with the skills needed for daily living, such as eating and performing personal hygiene, household chores, and food preparation. It also focuses on the social and adaptive skills which enable an individual to avoid institutionalization.” Id. at *3.

. The district court did decide that § 1396a(a)(30), a freedom of choice provision that Doe does not raise in this appeal, does not create an individual right enforceable under § 1983.

. Section 1396a(a)(8) provides:
A State plan for medical assistance must—
(8) provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals ....

. We have once before declined to dismiss a § 1983 action seeking to enforce § 1396a(a)(8), among other provisions of the Medicaid Act, but we did so on the unrelated ground of sovereign immunity. Antrican v. Odom, 290 F.3d 178, 191 (4th Cir.2002).

. The March 2003 plan of care that Doe, Doe’s family, and DDSN officials developed noted her desire to be in "a residential setting location within the Columbia area chosen by the family” and to have United Cerebral Palsy, a CTH II provider, as her provider. J.A. 179. But the plan did not indicate whether Doe would be sent to a CTH I or CTH II facility and, if so, who would select between the two types of settings. The recommendation in the plan of care merely stated that Doe "will receive residential habilitation from a DDSN approved provider.” J.A. 179.