795 S.E.2d 301

Albert C. MYERS, Appellant,

v.

SOUTH CAROLINA DEPARTMENT OF HEALTH
AND HUMAN SERVICES, Respondent.

Appellate Case No. 2014-000418
Opinion No. 5461

Court of Appeals of South Carolina.

Heard April 5, 2016
Filed December 21, 2016

610

Patricia Logan Harrison, of Columbia, for Appellant.

Damon C. Wlodarczyk, of Riley Pope & Laney, LLC, of Columbia; Richard G. Hepfer and Byron R. Roberts, of South Carolina Department of Health and Human Services, of Columbia; all for Respondent.

WILLIAMS, J.:

In this appeal from the administrative law court (ALC), Albert Myers claims the South Carolina Department of Health and Human Services (DHHS)—and more specifically, its agent, the South Carolina Department of Disabilities and Special Needs (DDSN) (collectively, the Department)—erred in failing to properly notify him of his reduction in Medicaid services in violation of his statutory and constitutional rights. Myers also contends the ALC erred in permitting a reduction or termination of his Medicaid services when the Department's decision did not comply with regulations promulgated in accordance with the South Carolina Administrative Procedures Act [1] (APA). Further, Myers claims the ALC erred in upholding the Department's denial of requested services by Myers' treating physician because the Department failed to provide any evidence from a qualified source that contradicted the treating physician's opinion as to which services were medically necessary for Myers' care. Last, Myers claims the ALC erred in concluding the Department did not violate the anti-retaliatory provisions of section 504 of the Rehabilitation Act of 1973,[2] the Americans with Disabilities Act (ADA) of 1990,[3] and Title VI of the Civil Rights Act of 1964 [4] based upon Myers' mother's public advocacy efforts after the Department

---

1. S.C. Code Ann. § 1-23-110 (2005 & Supp. 2016) (outlining the procedures for promulgating regulations).

2. 29 U.S.C. § 794 (2012).

3. 42 U.S.C. §§ 12101–12213 (2012).

4. 42 U.S.C. §§ 2000d–2000d-7 (2012).

either reduced or terminated Myers' Medicaid services. We affirm in part, reverse in part, and remand.

## I. FACTS/PROCEDURAL HISTORY

Myers is a thirty-eight-year-old Medicaid-eligible individual, who is mentally and developmentally disabled. He is nonverbal and suffers from athetoid quadriplegia, cerebral palsy, severe scoliosis, epilepsy, and arthrogroposis. Because Myers cannot swallow properly, he must ingest food and medications through a gastric tube. Myers filed this action after the Department either reduced or eliminated certain services that Myers received pursuant to the South Carolina Intellectual Disability/Related Disabilities (ID/RD) waiver program.

The ID/RD waiver program, created pursuant to 42 U.S.C. § 1396n(c) (2012), permits states to waive the requirement that persons with mental retardation or a related disability reside in an institutional setting to receive certain Medicaid services. *See Doe v. Kidd,* 501 F.3d 348, 351 (4th Cir. 2007). The waiver program provides Medicaid reimbursement to participant states for providing community-based services to individuals who would otherwise require institutionalized care. *See* 42 U.S.C. § 1396n(c).

■ Because the waiver program is governed by federal statute, when a state elects to participate in the program, it must comply with all federal Medicaid laws and regulations. *Kidd,* 501 F.3d at 351. Among other requirements, a state's waiver program "must specify the amount, duration, and scope of each service it provides." 42 C.F.R. § 440.230(a) (2012). States are expressly authorized to place limits on services or reduce the amount, duration, or scope of a provided service, so long as such reductions are approved by the federal government prior to implementation and such reductions are not done in an arbitrary manner or upon some other impermissible basis. *Id.* § 440.230(b)–(d). Once a waiver program is approved, the waiver remains in effect for a period of three years, but it may be renewed thereafter in five-year increments. 42 U.S.C. § 1396n(c)(3).

Federal law mandates a single state agency administer a state's Medicaid plan. 42 U.S.C. § 1396a(5). In South Carolina, DHHS is the state agency responsible for administering and

supervising the state's Medicaid programs, including the ID/RD waiver program. *See* S.C. Code Ann. § 44-6-30(1) (Supp. 2016); *Kidd*, 501 F.3d at 351. After DHHS submits the waiver plan to the federal government and the plan is approved, DDSN is then responsible for the daily administration of the waiver program and its services. S.C. Code Ann. § 44-20-240 (Supp. 2016).

In 2009, South Carolina submitted to the Centers for Medicare & Medicaid Services (CMS) a waiver renewal application, which eliminated certain nonmandatory services and implemented service limitations or caps on other categories of services. *See Stogsdill v. S.C. Dep't of Health & Human Servs.*, 410 S.C. 273, 275, 763 S.E.2d 638, 639 (Ct. App. 2014). CMS approved the waiver renewal application, and the renewed waiver—including the service caps—became effective January 1, 2010. *Id.*

Prior to the 2010 waiver renewal, Myers received the following: dental services; specialized medical equipment, medical supplies, and assistive technology; one hour of physical therapy per week; forty-five hours of personal care aide (PCA) II per week; six hours of community services per week; six hours of day services per week; forty-eight days of daily respite care; and 456 hours of hourly respite care per year. PCA services consist of hands-on personal care that Myers needs to accomplish his activities of daily living such as bathing, toileting, dressing, and eating. *See id.* "Respite [c]are can be a range of services, including personal care[,] but is designed to provide services when the normal caregiver is absent or needs relief." *Id.*

After the waiver renewal, Myers' services were modified as follows: physical therapy and daily respite care were eliminated; twenty-eight hours per week of PCA II services (reduction of seventeen hours); one full day of adult day health care services in lieu of the half-day community and day services; and sixty-eight hours per month of respite care, with an exception granting Myers an additional thirty-three hours per month (total of 101 hours of respite care per month). Beginning January 12, 2011, Myers was authorized to receive six hours of PCA I services and psychological counseling. Myers was subsequently institutionalized in a long-term care facility

in December 2011. At the time of his institutionalization, he was the youngest resident of the nursing home by forty years.

Myers filed this appeal in December 2009 when his services coordinator informed him that his Medicaid services would be reduced on January 1, 2010. On January 13, 2010, two weeks after Myers' services were altered, the director of DDSN notified Myers in writing that his request for reconsideration was denied. A hearing officer for DHHS issued an interlocutory order on February 25, 2010, in which the officer requested that Myers submit any allegations of error pertaining to his service modifications. Counsel for Myers responded on March 15, 2010, and DDSN replied to Myers' allegations. Based on these filings, the DHHS hearing officer issued an order of dismissal on May 6, 2010. However, the hearing officer failed to conduct an evidentiary hearing prior to issuing the order of dismissal.

In light of his failure to receive an evidentiary hearing, Myers appealed the order of dismissal to the ALC on June 18, 2010, challenging DHHS's May 6, 2010 order of dismissal (First Appeal). The ALC issued an order on November 9, 2011 (November 2011 Order), finding—among other things—that Myers' argument regarding the Department's failure to provide adequate notice was abandoned, and Myers was entitled to an evidentiary hearing regarding the reduction or elimination of his services to comply with due process. The ALC accordingly remanded Myers' case to the DHHS hearing officer for an evidentiary hearing. After the hearing officer conducted a hearing, she issued an order on February 9, 2012, upholding the reductions in Myers' services. Myers timely filed a motion to alter or amend, which the hearing officer denied on March 19, 2012. Myers then appealed to the ALC on April 13, 2012 (Second Appeal), challenging DHHS's final decision in this matter.

Myers raised the same issues[5] to the ALC in the Second Appeal that are before this court on appeal. In its February 3, 2014 order (February 2014 Order) affirming DHHS's decision, the ALC found the following: (1) Myers failed to preserve the

_____

5. Myers also claimed DHHS and an employee of DDSN improperly engaged in ex parte communications concerning his case. Myers, however, does not specifically raise that issue on appeal to this court.

issue of insufficient notice because Myers only raised the notice and due process arguments in the facts section of his brief to the ALC, and in the alternative, despite the Department's failure to comply with the technical requirements of the federal statute concerning notice, Myers failed to prove he was prejudiced; (2) the newly imposed service caps were not binding because they had not been promulgated as regulations under this state's APA; (3) because the service caps were not binding, the ALC was required to consider other evidence specific to Myers' case, a review of which demonstrated substantial evidence supported the Department's decision; and (4) Myers failed to prove the Department retaliated against him in violation of the ADA and the Civil Rights Act. This appeal followed.

## II. STANDARD OF REVIEW

This court's standard of review is governed by the APA. *See* S.C. Code Ann. § 1-23-380(5) (2005 & Supp. 2016). Pursuant to the APA, the court of appeals may affirm the agency's decision or remand the matter for further proceedings. *Id.* The court may also reverse or modify the decision

if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.*

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stogsdill*, 410 S.C. at 276, 763 S.E.2d at 640 (quoting *S.C. Dep't of Mental Health v. Moore*, 295 S.C. 42, 45, 367 S.E.2d 27, 28 (1988)). "When determining whether the record contains substantial evidence to support an administrative

agency's findings, [the appellate court] cannot substitute its judgment on the weight of the evidence for that of the agency." *Moore*, 295 S.C. at 45, 367 S.E.2d at 28 (quoting *S.C. Dep't of Mental Retardation v. Glenn*, 291 S.C. 279, 281–82, 353 S.E.2d 284, 286 (1987)). "Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence that, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached ... to justify its action." *Fragosa v. Kade Constr., LLC*, 407 S.C. 424, 428, 755 S.E.2d 462, 465 (Ct. App. 2013) (quoting *Taylor v. S.C. Dep't of Motor Vehicles*, 368 S.C. 33, 36, 627 S.E.2d 751, 752 (Ct. App. 2006)).

## III. LAW/ANALYSIS

### A. Notice & Due Process

Myers first claims his due process rights were violated because the Department failed to properly notify him of the reduction or termination in his Medicaid services. We disagree.

42 C.F.R. § 431.210 (2013) addresses the content of notices regarding changes in the waiver program as follows:

A notice required under § 431.206(c)(2), (c)(3), or (c)(4) of this subpart must contain—

(a) A statement of what action the State, skilled nursing facility, or nursing facility intends to take;

(b) The reasons for the intended action;

(c) The specific regulations that support, or the change in Federal or State law that requires, the action;

(d) An explanation of—

(1) The individual's right to request an evidentiary hearing if one is available, or a State agency hearing; or

(2) In cases of an action based on a change in law, the circumstances under which a hearing will be granted; and

(e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested.

It is uncontested that the Department's notice to Myers failed to include a citation to a specific regulation supporting the reduction in his benefits, or the changes in federal or state law

requiring the reduction, in compliance with 42 C.F.R. § 431.210(c). Despite this shortcoming, the ALC ruled in both its November 2011 Order in the First Appeal and February 2014 Order in the Second Appeal that the issue of notice was unpreserved because Myers failed to adequately argue the issue before the ALC.

In its November 2011 Order, the ALC stated Myers failed to preserve the issue because the notice argument was only referenced in the facts section of his brief and was not designated separately as a ground for appeal. The ALC also held Myers failed to include any citation to legal authority on the notice issue within the discussion section of his brief.

In Myers' motion to alter or amend the ALC's November 2011 Order, Myers quoted the argument section of his brief to the ALC, wherein he stated, "States that accept Medicaid funds obligate themselves to comply with all federal Medicaid laws. *Doe v. Kidd,* [501 F.3d 348, 351 (4th Cir. 2007)]. CMS, the federal Medicaid agency, has promulgated regulations to implement the statutes at 42 C.F.R. 431.200 et seq. which [the Department] is bound to follow." Myers then argued DHHS was aware of his notice argument because it responded in its brief with a full citation to 42 C.F.R. 431.210 and a statement that "[Myers] knew exactly what was being reduced and eliminated and what to appeal." Despite these arguments, the ALC denied Myers' motion to alter or amend, holding it appropriately ruled upon the notice issue in its initial November 2011 Order.

When Myers raised the defective notice issue in the Second Appeal to the ALC, the ALC noted the ruling from November 2011. However, the ALC also ruled on the merits of Myers' notice argument, finding, to overturn the Department's decision, Myers had to establish he was substantially prejudiced by the defective notice. Upon a review of the record, the ALC concluded

> [Myers] was sufficiently aware of the proposed changes in his services as a result of the waiver renewal, he was afforded the opportunity to a fair hearing, and he was represented by an attorney throughout the appeals process before [the Department]. [Myers] has not shown how the process or his fair hearing would have been conducted

differently had the notices complied with the technical requirements of 42 C.F.R. § 431.210. As such, [Myers] has simply not provided any evidence to the [c]ourt of how he was prejudiced by the lack of technical compliance with 42 C.F.R. § 431.210.

Initially, we are not convinced the ALC's ruling regarding preservation of Myers' notice claim is properly before this court. Myers contends it was the Department's responsibility to compile and present the record to the ALC, and the Department intentionally omitted Myers' brief, thus precluding the ALC from having sufficient evidence to make a proper decision in its November 2011 Order. While it appears the ALC did in fact have Myers' brief to consider in the First Appeal,[6] even if the ALC was deprived of Myers' brief, Myers failed to include his brief in the record on appeal to this court. As a result, we question whether the preservation component of his notice argument, and whether it was adequately argued to the ALC in the First Appeal, is preserved for our review. *See Bonaparte v. Floyd*, 291 S.C. 427, 444, 354 S.E.2d 40, 50 (Ct. App. 1987) (stating the appellant bears the burden of providing a record on appeal sufficient for intelligent review); Rule 210(h), SCACR ("[T]he appellate court will not consider any fact which does not appear in the Record on Appeal.").

Assuming Myers' notice argument was adequately raised to the ALC, Myers argues he was substantially prejudiced because if the Department had provided adequate notice that the medical necessity of his services would be challenged, then he could have provided live testimony from his treating physicians and dentist about the medical necessity of home-based services. We disagree.

"Any party in an administrative agency proceeding is entitled to certain procedural opportunities of notice and a fair hearing." *Palmetto All., Inc. v. S.C. Pub. Serv. Comm'n*, 282 S.C. 430, 435, 319 S.E.2d 695, 698 (1984). "Furthermore, proof of a denial of due process in an administrative proceeding requires a showing of substantial prejudice." *Id.*

---

6. In its November 2011 Order, the ALC responded to Myers' claim that he did not receive a fair hearing before DHHS's hearing officer by stating "[w]hile some documents were omitted from the record in this matter, all documents omitted are now a part of the record."

We are not persuaded by Myers' claim that his inability to introduce live testimony before the hearing officer resulted in substantial prejudice. As the Department stated in its brief, Myers provided a statement and affidavit from his treating physician, which was introduced into evidence and considered by the Department hearing officer on remand from the ALC. The hearing officer also considered testimony regarding Myers' needs and his condition from Myers' speech pathologist, his psychological counselor, his personal care aide, and his mother. In addition, the Department submitted its prehearing brief to Myers prior to the DHHS hearing setting forth its arguments and justifications for the modification to his services. Accordingly, we find Myers failed to prove he was substantially prejudiced by the Department's failure to comply with the technical requirements of § 431.210.

In *Stogsdill*, this court addressed a similar factual and legal scenario.[7] *See* 410 S.C. 273, 763 S.E.2d 638. Similar to Myers, Stogsdill was receiving a combination of home-based and community-based services pursuant to the ID/RD waiver. *Id.* at 275, 763 S.E.2d at 639. Once the state's waiver program was renewed in January 2010, Stogsdill's occupational and speech therapies were discontinued and his personal care aide, companion care, and respite care services were all reduced. *Id.* at 275–76, 763 S.E.2d at 639. Stogsdill appealed the reduction in services through the administrative process, and the reduction was ultimately affirmed by the ALC. *Id.* at 276, 763 S.E.2d at 639. Stogsdill raised the same notice argument to this court that Myers raises in his appeal. *Id.* at 281, 763 S.E.2d at 642. This court concluded that, although DDSN's notice regarding Stogsdill's reduction in services failed to comply with 42 C.F.R. § 431.210, the record demonstrated Stogsdill fully exercised his opportunity for a hearing and judicial review, and thus, he could not establish he was substantially prejudiced. *Id.* at 281–82, 763 S.E.2d at 642. Therefore, like in *Stogsdill*, we find Myers failed to demonstrate he was substantially

---

7. Although *Stogsdill* had not been decided prior to the parties' submission of their briefs—and thus, was not addressed by either party in this case—the supreme court eventually dismissed Stogsdill's petition for certiorari as improvidently granted. *See Stogsdill v. S.C. Dep't of Health & Human Servs.*, 415 S.C. 242, 781 S.E.2d 719 (2016). Likewise, the United States Supreme Court denied certiorari on October 3, 2016. *See* —— U.S. ——, 137 S.Ct. 278, 196 L.Ed.2d 51 (2016).

prejudiced and decline to find his due process rights were violated.[8]

## B. Lawfulness of Reduction in Waiver Services

 Myers next claims the reduction in his Medicaid services was unlawful because they were not promulgated as regulations pursuant to the APA. We disagree.

 Under the APA, " '[r]egulation' means each agency statement of general public applicability that implements or prescribes law or policy or practice requirements of any agency. Policy or guidance issued by an agency other than in a regulation does not have the force or effect of law." S.C. Code Ann. § 1-23-10(4) (2005).

> [W]hether an agency's action or statement amounts to a rule—which must be formally enacted as a regulation—or a general policy statement—which does not have to be enacted as a regulation—depends on whether the action or statement establishes a "binding norm." When the action or statement "so fills out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion," then it is a binding norm which should be enacted as a regulation. But if the agency remains free to follow or not follow the policy in an individual case, the agency has not established a binding norm.

*Sloan v. S.C. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 475–76, 636 S.E.2d 598, 610 (2006) (quoting *Ryder Truck Lines, Inc. v. U.S.*, 716 F.2d 1369, 1377 (11th Cir. 1983)), *overruled on other grounds by Joseph v. S.C. Dep't of Labor, Licensing, & Regulation*, 417 S.C. 436, 790 S.E.2d 763 (2016).

We again turn to *Stogsdill*, wherein this court addressed the same issue of whether the 2010 Medicaid service caps under the ID/RD waiver program were lawful when the changes to the waiver program were not passed as regulations pursuant

8. We again, as we did in *Stogsdill*, reiterate our concern regarding the Department's non-compliance with the mandatory statutory notice requirement set forth in 42 C.F.R. § 431.210. Despite our finding that Myers suffered no prejudice, we do not condone the Department's shortcoming in this respect as this regulation is intended to ensure affected recipients have the fullest and fairest opportunity to exercise their rights.

to the state's APA. 410 S.C. at 277, 763 S.E.2d at 640. The court agreed with Stogsdill's position that DDSN had established a binding norm by reducing the types and amount of services offered under the waiver program. *Id.* at 278, 763 S.E.2d at 640. We also acknowledged the record contained no explanation for the reduction in Stogsdill's services—only that the cap was instituted as a result of the 2010 waiver. *Id.*

However, we went on to hold that, "based on the relevant statutory scheme and federal/state nature of Medicaid and the [w]aiver, DDSN was not required to pass a regulation to enact the cap as an enforceable provision." *Id.* Specifically, this court concluded that 42 U.S.C. § 1396n(c) permits states to waive federal Medicaid requirements to provide enhanced community support services to Medicaid recipients who would otherwise require institutionalization. *Id.* at 280, 763 S.E.2d at 642. Because CMS approved South Carolina's waiver plan, the terms of the waiver program carried the force and effect of federal law and were not required to be promulgated as regulations under the state's APA. *Id.*

The *Stogsdill* court also highlighted our supreme court's holding in *Doe v. South Carolina Department of Health & Human Services*, 398 S.C. 62, 727 S.E.2d 605 (2011), as support for the conclusion that the state may change its waiver program so long as those changes are included and approved in the waiver application to the federal government. 410 S.C. at 279, 763 S.E.2d at 641. The precise issue in *Doe*—whether the state could impose a definition of mental retardation that was more restrictive than the federal definition for purposes of determining eligibility for waiver services—is not before this court. However, we find the holding of *Doe*—that federally approved waiver provisions carry the force and effect of law—answers the question Myers raises here. As a result, it is unnecessary for such provisions to be promulgated as state regulations to be enforceable. *See Doe*, 398 S.C. at 74, 727 S.E.2d at 611 (explaining "it is clear that South Carolina *could have* listed additional criteria in the waiver application for the purpose of defining the population to whom it would provide waiver services" and finding that because DDSN took no steps to formally impose more restrictive eligibility requirements, either through the federal waiver application process or through the state process for promulgating regulations,

DDSN could not subsequently alter waiver eligibility requirements merely by issuing an informal policy decision); *see also Dallas v. Lavine*, 79 Misc.2d 395, 358 N.Y.S.2d 297, 302 (N.Y. Sup. Ct. 1974) (explaining that states have the authority to restrict the scope of Medicaid benefits they will finance and a state's lawful decision to reduce Medicaid benefits does not constitute the adoption of a policy that requires publication or promulgation).

Based upon this court's holding in *Stogsdill*, we disagree with the ALC's finding in its February 2014 Order that "CMS's approval of the State's Medicaid Plan ... does not make it a binding document. ... Although CMS approved South Carolina's proposed waiver reductions, the new service caps do not have the force and effect of law." Consistent with *Stogsdill*, we find approval by state regulation was not required for the 2010 service caps to carry the force and effect of law. Consequently, we modify the ALC's holding that the waiver caps were not binding because they had not been promulgated as regulations.

## C. Medical Necessity of Services

Myers argues the ALC erred in disregarding the overwhelming evidence from Myers' treating physician and other qualified sources regarding the amount and types of services that were medically necessary to prevent Myers' institutionalization.[9] We agree.

---

9. Myers frames this issue as whether the ALC failed to give Myers' treating physician, Dr. Munn, the "greatest deference" as required by Justice Kennedy's concurrence in *Olmstead* as well as whether the ALC's decision ignored the overwhelming evidence regarding the medical necessity of Myers' services. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 610, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) ("It is of central importance, then, that courts apply today's decision with great deference to the medical decisions of the responsible, treating physicians and, as the Court makes clear, with appropriate deference to the program funding decisions of state policymakers."). Although Myers does not specifically raise an ADA argument in this section of his brief, we find the crux of his argument is that substantial, reliable evidence in the record proves Myers' reduction in services poses a substantial risk of institutionalization in violation of the ADA. Accordingly, we address the argument as such.

We believe this approach is proper considering this court's resolution of the same issue in *Stogsdill*. 410 S.C. at 284–85, 763 S.E.2d at 644

In *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 599–602, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), the United States Supreme Court held that requiring the plaintiffs—women suffering from intellectual disability and mental illnesses—to be institutionalized and segregated from the general population was discriminatory and violated the anti-discrimination provision contained in the public services portion (Title II) of the ADA. To that end, the Supreme Court held that care and treatment for qualified, disabled individuals was to be provided in the most integrated, least restrictive environment possible. *Id.* at 602, 119 S.Ct. 2176. In the post-*Olmstead* case of *Pashby v. Delia*, 709 F.3d 307, 321–23 (4th Cir. 2013), the United States Court of Appeals for the Fourth Circuit addressed whether Medicaid-eligible individuals were entitled to a preliminary injunction that would prevent the termination of in-home services based on claims that, without the injunction, these individuals were at risk of institutionalization in violation of the ADA's integration mandate. The Fourth Circuit concluded the plaintiffs presented testimony in the record from qualified sources that these individuals were at a significant risk of institutionalization with the termination of in-home services. *Id.* at 322.

We believe that, consistent with *Olmstead* and *Pashby*, Myers has presented an overwhelming amount of evidence that a reduction or termination of his services would place him at risk of institutionalization. Myers' treating physician, Dr. Susan Munn, stated that Myers requires continuous and constant supervision due to his "extremely medically complex condition," and because "[h]is mother is well trained in his

---

(disagreeing with plaintiff's argument regarding lawfulness of waiver caps and lack of due process but finding DHHS presented no probative evidence contrary to the testimony of plaintiff, his treating physician, his psychologist, and his mother, and as a result, the ALC's conclusion that the plaintiff's risk of institutionalization was speculative was unsupported by substantial evidence in the record). Further, because we believe the probative, reliable evidence supports the conclusion that a reduction in services would pose a risk of institutionalization for Myers, we decline—as this court did in *Stogsdill*—to address the "greatest deference" argument advanced by Myers. *See id.* at 285 n.5, 763 S.E.2d at 644 n.5 (declining to address plaintiff's "greatest deference" argument based on this court's determination that the record contained substantial evidence to support the plaintiff's risk of institutionalization argument).

medical needs and is able to supervise and monitor the care provided by others in [Myers'] home[,] [t]his is the least restrictive environment for him at the present time." Dr. Munn also concluded Myers needs physical and occupational therapy to prevent regression and contractures. Further, Dr. Munn concluded "[i]f the services and supports that were ordered had been provided, including the number of hours of nursing and personal care attendant services determined to be medically necessary, it is likely that Mr. Myers would have been able to remain in the community in a less restrictive setting."

Myers also provided the testimony of Sandra Ray, Myers' guardian ad litem and a certified speech language pathologist. Ray stated the best place for Myers' care was in his home because his mother could anticipate his physical and emotional needs and could "in essence [be] the expert for him and about him." Ray also concluded Myers needed a speech-generating device, which was available pursuant to the waiver program, physical therapy and nursing services to prevent hospitalization, and grief counseling to prevent depression.

Lennie Mullis, Myers' psychological counselor, also discussed Myers' need for psychological services and how respite care was an unacceptable substitute for the personal care services Myers received prior to the waiver renewal. Mullis also concurred with Dr. Munn's assessment of which specialized services Myers needed. Although Mullis acknowledged that Myers was eligible for physical therapy and a certain amount of nursing services under the Medicaid state plan, she believed Myers needed a speech-generating device, dental services, and psychological services to maintain his quality of life and avoid hospitalization, and these services were only available under the waiver program.

Significantly, we find the Department failed to present *any* medical evidence to dispute the treatment decisions of Dr. Munn. While we do not suggest the ALC is required to absolutely defer to the treating physician's recommendations, we find no evidence in the record that the Department considered other medical testimony or other conflicting, yet credible, opinions regarding the necessary services for Myers' care. We are not persuaded by the service coordinator's testimony that

the Department "considers" the opinions of a waiver participant's treating physician while giving "equal weight to all of the information" to obtain a "holistic picture" of the case, particularly in light of DDSN's director's statement that the reduction in services was a direct result of "devastating budget cut reductions." And while the ALC recounted each service Myers needed in its order and that "it [wa]s *likely*" Myers would be eligible for most of those services under the State Medicaid plan, we are not convinced the ALC's conclusion that "the combination of services *appear* to be in a sufficient amount to cover [Myers'] daily needs" is supported by substantial evidence in the record.

Accordingly, we reverse the ALC's conclusion that the Department presented substantial evidence that Myers' daily needs were being met under the revised provisions of the waiver and remand the case for an assessment of required hours and services without reference to the caps in the waiver.[10] *See Stogsdill*, 410 S.C. at 286, 763 S.E.2d at 644–45 (finding substantial evidence in the record did not support the ALC's determination that Stogsdill's risk of institutionalization was merely speculative and remanding to DDSN for consideration of which services would be appropriate without the restrictions of the 2010 waiver).

## IV. CONCLUSION

We hold the caps in the waiver were not required to be promulgated as regulations to carry the force and effect of law, and we conclude Myers was not denied due process by the Department's inadequate notice. However, based on the substantial evidence in the record, we find the ALC erred in concluding Myers' reduction in services did not pose a substantial risk of institutionalization. Consequently, we remand Myers' case to DDSN for a consideration of the appropriate

10. We decline to address Myers' claim that the Department retaliated against him and his mother in violation of federal anti-retaliation law because resolution of Myers' risk of institutionalization argument is dispositive. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (recognizing an appellate court need not address an issue when resolution of a prior issue is dispositive).

services to be provided without reference to the restrictions in the 2010 waiver. Based on the foregoing, the ALC's order is

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

LOCKEMY, C.J., and MCDONALD, J., concur.